

**IT IS ORDERED as set forth below:**

**Date: March 21, 2018**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| In re: | | CASE NUMBER |
|---|---|---|
| **CHERICE CHAMAINE MITCHELL**, | | **17-68428-PMB** |
| Debtor. | | CHAPTER 7 |

| | | |
|---|---|---|
| **CHERICE CHAMAINE MITCHELL**, | | |
| Movant, | | |
| v. | | CONTESTED MATTER |
| **FIRST FRANKLIN FINANCIAL CORPORATION**, | | |
| Respondent. | | |

**ORDER DENYING DEBTOR'S MOTION**
**TO AVOID FIRST FRANKLIN FINANCIAL CORPORATION'S TITLE LIEN**

This matter comes before the Court on the Debtor's *Motion to Avoid Lien, or in the Alternative, Motion to Redeem Vehicle* and the accompanying *Brief in Support of Motion to*

*Avoid Lien, or in the Alternative, Motion to Redeem Vehicle* (Docket Nos. 31 and 32)(collectively, the "Motion") filed on January 19, 2018.[1]  In the Motion, the Debtor seeks to avoid a voluntary title lien (the "Title Lien") held by First Franklin Financial Corporation ("First Franklin") in a 2006 Ford Five Hundred (the "Vehicle") to the extent that the Title Lien constitutes a nonpossessory, nonpurchase-money security interest in a tool of the Debtor's trade.[2]  Specifically, the Debtor asserts that the Vehicle constitutes a tool of her trade under O.C.G.A. § 44-13-100, such that the Title Lien held by First Franklin is avoidable under 11 U.S.C. § 522(f)(1)(B).

In response to the Motion, First Franklin filed its *Response to Motion to Avoid Lien* (Docket No. 34)(the "Response"), asserting that it holds a valid and perfected security interest in the Vehicle not subject to lien avoidance under Section 522.  Upon review of the Motion and Response, the Court entered an *Order and Notice of Hearing on Debtor's Motion to Avoid Lien* (Docket No. 35), scheduling the Motion for a hearing on February 26, 2018 (the "Hearing").  At the Hearing, the Debtor appeared *pro se* in support of the Motion, and counsel for First Franklin ("Counsel") appeared in opposition.

The Debtor asserted at the Hearing that she obtained a loan from First Franklin in either 2013 or 2014, and that in exchange for the loan the Debtor granted First Franklin a voluntary nonpossessory, nonpurchase-money security interest in the Vehicle.  The Debtor also contended that the Vehicle is a tool of her trade under applicable state law.  In this regard, the Debtor

---

[1] The Debtor subsequently filed an *Amended Motion to Avoid Lien* and accompanying *Brief In Support of Amended Motion to Avoid Lien* on February 26, 2018 (Docket Nos. 45 & 46)(collectively, the "Amended Motion"), ostensibly to delete any reference to the redemption of the subject property, which was sought in the alternative to lien avoidance in the Motion. Outside of this revision, the Debtor appears to be seeking the same relief in the Amended Motion she did in the initial Motion. Thus, this Order resolves both the Motion and the Amended Motion.

[2] In addition to the voluntary Title Lien, First Franklin also holds a judgment lien against the Vehicle.  Avoidance of that judgment lien was addressed by a prior order entered on March 7, 2018 (Docket No. 48).  This Order relates solely to the Title Lien.

explained that she works as a law clerk and tutor, both of which require her to use the Vehicle to travel to and from work sites and client visits. The Debtor further noted that she could not sustain her employment without the use of the Vehicle.

Conversely, Counsel asserted at the Hearing that the Debtor could not avoid the Title Lien under the tools of trade exemption. Specifically, Counsel stated that the Debtor's use of the tools of trade exemption was misplaced, as the Vehicle does not constitute a tool of the Debtor's trade under applicable case law. To that end, Counsel noted that the vast majority of case law on this issue cuts in its favor—that generally, a debtor's vehicle used solely as a means for transportation to work does not qualify as a tool of the debtor's trade. Counsel also presented at the Hearing a copy of the Vehicle's certificate of title that reflected a notation of First Franklin's voluntary Title Lien on the Vehicle as required by Georgia law. See O.C.G.A. § 40-3-50. Counsel also confirmed at the Hearing that the Title Lien was not a purchase money lien, and did not dispute the Debtor's assertion that the Title Lien is a nonpossessory, nonpurchase-money security interest.

## DISCUSSION

Section 522(f) of the Bankruptcy Code permits the Debtor to avoid certain judgment liens and nonpossessory, nonpurchase-money security interests that encumber the Debtor's property, to the extent they impair an exemption to which the Debtor is entitled. 11 U.S.C. § 522(f)(1). Specifically, the Debtor may avoid a lien that constitutes a nonpossessory, nonpurchase-money security interest in certain types of property, including a tool of the Debtor's trade. 11 U.S.C. § 522(f)(1)(B)(ii). Here, the parties appear to agree that the Title Lien arose from a nonpossessory, nonpurchase-money security interest taken by First Franklin in the Vehicle, as the Debtor's assertion to that effect was uncontroverted at the Hearing. Thus, whether the

3

Debtor can avoid the Title Lien turns on whether the Vehicle constitutes a tool of the Debtor's trade under applicable state exemption laws.  See Matter of Curry, 18 B.R. 358, 359 (Bankr. N.D. Ga. 1982).

Generally, a debtor may exempt certain property from the bankruptcy estate pursuant to Section 522(b) of the Bankruptcy Code.  11 U.S.C. § 522(b).  These exemptions include a list of the various types of property that are exempt from the bankruptcy estate.  Id.  However, Section 522(b) entitles states to opt out of these federal exemptions in preference of their own exemptions.  Id.  Georgia has made such an election.  In re Rogers, 538 B.R. 158, 171 (Bankr. N.D. Ga. 2015).  As a result, a debtor in Georgia must look to the state's exemption statute, O.C.G.A. § 44-13-100, to determine whether certain property may be exempted from the bankruptcy estate.

Under Georgia law, a debtor is entitled to exempt up to $1,500.00[3] in value in "tools of the [the Debtor's] trade."  O.C.G.A. § 44-13-100(a)(7).  In drafting § 44-13-100, the Georgia legislature failed to define the phrase "tools of the trade."  See O.C.G.A. § 44-13-100, *passim*.  As a result, it has been left to the courts to construe the phrase "tools of the trade" and to define its outer boundaries.  See Matter of Curry, 18 B.R. at 359.

In defining "tools of the trade," there is a split of authority as to whether a motor vehicle may qualify as a "tool of the trade."  In re Conerton, 2004 WL 5846767, at *1 (Bankr. N.D. Ga. Jan. 13, 2004)(noting the split of authority).  However, several courts have held that a vehicle cannot be considered a "tool of the trade" if it is used merely as a means to travel to work.  Id. at *1-2 (collecting cases and concluding that a vehicle used by the debtor-husband to visit customers and carry tools used to install televisions is not a tool of the trade under Section

---

[3] The Debtor asserts that the Vehicle is worth around $800, and has filed an exemption as to the Vehicle in the amount of $750 (Docket No. 40).  First Franklin asserts that the Vehicle is worth over $3,000.  In light of the Court's ruling, it is not necessary to resolve this valuation dispute in connection with this Order.

4

522(f)(1)(B)); see also Matter of Curry, 18 B.R. at 360 (explaining that utilizing a vehicle as transport to and from work is "clearly distinguishable from manual use of a tool by the debtor at work"); In re Parker, 40 B.R. 490 (Bankr. N.D. Ala. 1984)(denying lien avoidance in a vehicle where the debtor failed to demonstrate that the vehicle served "any other purpose than to provide a means of transportation to and from work").  Thus, in claiming the tool of trade exemption in a vehicle, it is insufficient to show that the vehicle is essential for traveling to work, even if the motor vehicle is the debtor's sole means of commuting.  In re Montano, 98 B.R. 390, 392 (Bankr. N.D. Ill. 1989).  Rather, a vehicle is properly classified as a tool of trade where the debtor can show that her "occupation . . . is uniquely dependent on [the vehicle's] use."  Id. (citing In re Dubrock, 5 B.R. 353, 354 (Bankr. W.D. Ky. 1980)).

In the Motion and at the Hearing, the Debtor relied heavily upon the holding and reasoning of Matter of Schneider, in which the court found that the debtor's motor vehicle, used in his occupation as a traveling salesman, constituted a tool of the trade under Georgia law. Matter of Schneider, 37 B.R. 747 (Bankr. N.D. Ga. 1984).  In determining whether a motor vehicle could be considered a tool of the trade, the Schneider court utilized a two-step factual inquiry by asking: "(1) what is the debtor's trade and (2) whether the item sought to be avoided is integral to the debtor's trade."  Matter of Schneider, 37 B.R. at 750.  In conducting such an analysis, the court found that the "essence of [the debtor's occupation as a traveling salesman] is travel," thereby finding that the debtor's motor vehicle was a tool of his trade.  Id. at 751 (internal quotes omitted).

The facts before the Court do not permit a determination that the Vehicle qualifies as a "tool of the trade" under O.C.G.A. § 44-13-100(a)(7).  At the Hearing, the Debtor asserted that the Vehicle constituted a tool of her trade because her work as a law clerk and tutor requires her

5

to travel from site to site to meet with her clients. Although undoubtedly important to her ability to travel to and from these work sites and conduct her business with clients, the Debtor has made no showing that her occupation is uniquely dependent on the Vehicle, or that the Vehicle is integral to her occupation. Although the Debtor contended that she could not conduct her work without the Vehicle, such a statement does not mean that her ability to conduct her work is *uniquely dependent* on her use of the Vehicle. It is probably correct to state that the Vehicle is necessary for *travelling* to and from work; however, working as a tutor and law clerk is not *uniquely tied* to the Vehicle—in other words, the practice of such professions is not reliant upon and subject to the practitioner's utilization of a motor vehicle.

Said differently, the Court is not convinced that the "essence" of Debtor's occupation is travel. Rather, it appears that travelling is merely incidental to Debtor's employment as a law clerk and tutor. Nearly all of the Debtor's statements regarding her use of the Vehicle in relation to her occupation solely related to transportation to and from work. As suggested *supra*, courts "have denied lien avoidance where the evidence showed that the connection between the debtor's occupation and [her] automobile was for transportation to and from work." Schneider, B.R. at 750. Here, the Debtor's use of the Vehicle with regard to her trade is solely limited to commuting purposes, and the Court is "reluctant to open a Pandora's box" by finding the Title Lien avoidable under these circumstances. See In re Conerton, 2004 WL 5846767, at *2; Matter of Curry, 18 B.R. at 360. Consequently, based on the facts presented by the parties in their pleadings and statements made at the Hearing, the Court finds that the Vehicle is not a "tool of the trade" under O.C.G.A. § 44-13-100(a)(7). As a result, the Debtor cannot avoid the Title Lien held by First Franklin pursuant to 11 U.S.C. § 522(f)(1).

In light of the foregoing, and upon review of the pleadings filed in this matter and the arguments made on the record at the Hearing, it is

**ORDERED** that the Motion is **DENIED** with regard to the Title Lien.

The Clerk is directed to serve a copy of this Order upon the Debtor, First Franklin, the Chapter 7 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**